# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| TERESA FIVEASH, Individually and on Behalf of all Others Similarly Situated,<br><br>                  **Plaintiffs,**<br>vs.<br><br>US CORRECTIONS, LLC AND SOUTH EAST PERSONNEL LEASING, INC.,<br><br>                  **Defendants.** | Case No. 1:20-cv-00866-RP |

## DEFENDANT SOUTH EAST PERSONNEL LEASING, INC.'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT

Respectfully submitted,

By:   */s/ Heidi J. Gumienny*
      HEIDI J. GUMIENNY
      Texas Bar No. 24036696
      hgumienny@grsm.com
      GORDON REES SCULLY MANSUKHANI LLP
      3D/International Tower
      1900 West Loop South, Suite 1000
      Houston, TX  77027
      Phone: (713) 961-3366
      Fax: (713) 961-3938

      **ATTORNEYS FOR DEFENDANT**
      **SOUTH EAST PERSONNEL LEASING, INC.**

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND ...................................................................................... 1

III. SUMMARY JUDGMENT STANDARD .................................................................... 3

IV. ARGUMENT ............................................................................................................... 4

    A. The Court should grant summary judgment as to Plaintiff's overtime claim because USC, as a DOT-Regulated Entity, did not have any legal obligation to pay overtime to Plaintiff or MCA-Exempt drivers. ................................................. 5

        1. USC's Prison Transport Operations are Regulated by the Department of Transportation. ................................................................................................ 5

        2. Plaintiff's position as an Extradition Officer is a Safety-Affecting Position within the MCA Exemption. .......................................................................... 8

    B. The MCA exemption applies to SPLI pursuant to the Fifth Circuit's holding in Songer v. Dillon Resources, Inc., 618 F.3d 467 (5th Cir. 2010). .......................... 10

    C. Plaintiff's sole relief for her claim for failure to post notices required by 29 CF.R. § 516.4 is equitable tolling. ................................................................................... 12

    D. There is no private right of action for alleged violations of the FLSA's recordkeeping requirements under 29 U.S.C. § 211 (c). ....................................... 13

V. CONCLUSION .......................................................................................................... 13

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allen v. Coil Tubing Servs., L.L.C.*,
   755 F.3d 279 (5th Cir. 2014) .................................................................................................. 5

*Amaya v. Noypi Movers, L.L.C.*,
   741 Fed. Appx. 203 (5th Cir. 2018) ...................................................................................... 10

*Avery v. Chariots For Hire*,
   748 F. Supp. 2d 492 (D. Md. 2010) ........................................................................................ 6

*Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors, Inc.*,
   804 F.2d 879 (5th Cir. 1986) .................................................................................................. 3

*Boudreaux v. Swift Transp. Co.*,
   402 F.3d 536 (5th Cir. 2005) .................................................................................................. 3

*Carley v. Crest Pumping Techs., L.L.C.*,
   890 F.3d 575 (5th Cir. 2018) .................................................................................................. 4

*Cunningham v. Elec. Data Sys. Corp.*,
   579 F. Supp. 2d 538 (S.D.N.Y. 2008) ................................................................................... 13

*Elwell v. Univ. Hosps. Home Care Servs.*,
   276 F.3d 832 (6th Cir. 2002) ................................................................................................ 13

*Johnson v. Heckmann Water Res. (CVR), Inc.*,
   758 F.3d 627 (5th Cir. 2014) .................................................................................................. 4

*Mello v. Sara Lee Corp.*,
   431 F.3d 334 (5th Cir. 2005) .................................................................................................. 3

*O'Quinn v. Chambers Cty., Tex.*,
   (S.D. Tex. 1986), *amended on other ground*s,
   650 F. Supp. 25 (S.D. Tex. 1986) ......................................................................................... 13

*Rosales v. HEB Grocery Co.*,
   2016 WL 3458214 (S.D. Tex. Jun. 24, 2016) ................................................................. 12, 13

*Rossi v. Associated Limousine Servs., Inc.*,
   438 F. Supp. 2d 1354 (S.D. Fla. 2006) ................................................................................. 13

*Songer v. Dillon Resources, Inc.*,
   618 F.3d 467 (5th Cir. 2010) ....................................................................................... 1, 10, 11

*Spires v. Ben Hill Cty.*,
  980 F.2d 683 (11th Cir. 1993) .................................................................................... 4

*Vanzzini v. Action Meat Distributors, Inc.*,
  995 F. Supp. 2d 703 (S.D. Tex. 2014) ....................................................................... 8

*White v. U.S. Corrections, L.L.C.*,
  2019 WL 5106019 (Oct. 11, 2019),
  *rev'd on other grounds*, 996 F.3d 302 (5th Cir. 2021) ..................................... 4, 5, 8, 13

**Statutes**

29 U.S.C. § 211 ................................................................................................................ 1, 13

29 U.S.C. § 213 ................................................................................................................. 1, 4

29 U.S.C. §§ 201 .................................................................................................................... 1

34 U.S.C. § 60101 .................................................................................................................. 9

34 U.S.C. § 60104 .................................................................................................................. 9

49 U.S.C. § 13102 .................................................................................................................. 6

49 U.S.C. § 13501 .................................................................................................................. 6

49 U.S.C. § 31132 .................................................................................................................. 6

**Rules**

29 C.F.R. § 516.4 ......................................................................................................... 1, 12, 13

29 C.F.R. § 782.0 ................................................................................................................... 4

29 C.F.R. § 782.2 .......................................................................................................... 4, 5, 6, 8

29 C.F.R. § 782.8 ................................................................................................................... 4

Fed. R. Civ. P. 56 ........................................................................................................... 1, 3, 14

**Regulations**

*Prisoner Transportation Services, LLC-Control U.S. Corrections, LLC d/b/a U.S.C.*,
  81 Fed. Reg. 122 (June 24, 2016) ............................................................................ 2

**TO THE HONORABLE DISTRICT COURT:**

Defendant South East Personnel Leasing, Inc. ("SPLI") files this Motion for Traditional Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and in support thereof, would respectfully show the following:

## I.   INTRODUCTION

On August 18, 2020, Plaintiff Teresa Fiveash filed her Original Complaint alleging that Defendants SPLI and US Corrections, LLC ("USC") jointly employed Plaintiff and failed to: (a) pay her overtime in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"); (b) post the employee notices required by 29 C.F.R. § 516.4; and (c) maintain accurate time and pay records pursuant to 29 U.S.C. § 211(c).  ECF No. 1, ¶ 4, 18, 41, 42.

SPLI asks the Court to grant summary judgment against Plaintiff and other similarly situated employees.  Specifically, this Court should grant summary judgment because: (1) Plaintiff is exempt from the overtime pay requirements of the FLSA under the Motor Carrier Act ("MCA") Exemption, 29 U.S.C. § 213(b); (2) the MCA exemption applies to SPLI even though it is not a motor carrier, pursuant to the Fifth Circuit's holding in *Songer v. Dillon Resources, Inc.*, 618 F.3d 467 (5th Cir. 2010); (3) Plaintiff's sole relief for her claim for failure to post notices required by 29 C.F.R. § 516.4 is equitable tolling; and (4) there is no private right of action relating to Plaintiff's recordkeeping claim under 29 U.S.C. § 211(c).

## II.   FACTUAL BACKGROUND

USC is a "private prisoner transportation services company" engaged in the business of intrastate and interstate prisoner transport.  ECF No. 1, ¶ 14; **Ex. 1**, Public Notice by Nat'l Surface Transp. Bd. Regarding USC's Approval to Operate (NSTB Approval).[1]  This is a highly

---

[1] **Ex. 1** is a matter of public record that the Court can and should consider for Rule 56 purposes.  *See Prisoner Transportation Services, LLC-Control U.S. Corrections, LLC d/b/a*

243037                                          1

specialized field regulated by the Secretary for the U.S. Department of Transportation ("DOT"). USC employs drivers to transport prisoners—in its DOT-approved fleet of passenger vans capable of transporting up to fourteen passengers—between correctional facilities across the United States. *Id.* at 41369. Indeed, the Secretary of Transportation authorized USC's drivers to take custody, transport, and house prisoners en route to the requesting agency and/or transfer prison facility. *Id.* DOT's Federal Motor Carrier Safety Administration ("FMCSA") classifies USC as interstate motor carriers for passenger transportation. **Ex. 2**, Public Information Regarding USC Available on FMCSA Website.[2] *See also* ECF No. 1, ¶¶ 13, 16, 18–20. USC's DOT-issued license number is 2515080, and its FMSCA Carrier Registration Number is MC-872586. *Id.*

SPLI is a staff leasing company that provides certain outsourced administrative services, including payroll administration, to its clients. SPLI contracted with USC to provide such services to USC and its employees and/or the employees of Brevard Extraditions, LLC, an affiliate of USC. **Ex. 3**, Declaration of Heather Clark, SPLI's Director, Benefits and Human Resources.

Plaintiff worked as an Extradition Agent/Officer for USC from June 13, 2018, to March 15, 2020. **Ex. 6**, USC's Responses Plaintiff's Interrogatories Nos. 1 and 3, confirming Plaintiff's employment and period of employment. "Extradition Agents operate commercial motor vehicles (passenger vans designed to transport 8 or more passengers) to securely transport prisoners and

---

*U.S.C.*, 81 Fed. Reg. 122, 41368 (June 24, 2016), *available at* https://www.federalregister.gov/documents/2016/06/24/2016-15009/prisoner-transportation-services-llc-control-us-corrections-llc-dba-usc (last accessed January 10, 2022).

[2] **Ex. 2** is also *available at* https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type=queryCarrierSnapshot&query_param=USDOT&original_query_param=NAME&query_string=2515080&original_query_string=US%20CORRECTIONS%20L LC (last accessed January 14, 2022). USC's Department of Transportation (DOT)-issued license is number is 2515080, and its FMSCA Carrier Registration Number is MC-872586.

inmates to and from prisons and jails across the country via public highways and interstates (interstate travel)." *Id.*, USC's Response to Interrogatory No. 3. As Plaintiff pled in her Original Complaint, she was employed as an Extradition Officer and "was responsible for transporting inmates between prisons and other facilities in passenger vans weighing less than 10,000 pounds." ECF No. 1, ¶ 20.

Because USC's prisoner transportation drivers are subject to the Secretary of Transportation's authority—and particularly the power to set maximum hours of service and qualifications pursuant to 49 U.S.C. § 31502, this Court should grant summary judgment as to Plaintiff's overtime claim because Plaintiff (and all individuals whom she purports are similarly situated) are exempt from the FLSA's overtime requirements under the Motor Carrier Act Exception. Accordingly, SEPL respectfully requests that the Court grant summary judgment in favor of SEPL as to Plaintiff's overtime claim.

### III.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits shows that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *Mello v. Sara Lee Corp.*, 431 F.3d 334, 335 (5th Cir. 2005). In making that determination, the Court reviews the evidence and draws all inferences in the light most favorable to the nonmoving party. *Baton Rouge Bldg. & Constr. Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986). "Once the moving party has demonstrated the absence of a material fact issues, the non-moving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

## IV.     ARGUMENT

Plaintiff bears the burden of showing she is a "covered employee" under the FLSA, 29 U.S.C. § 207. Plaintiff cannot meet this burden. *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018) ("There is no dispute that [p]laintiffs bear the initial burden of proving that they were covered under FLSA's overtime pay requirement); *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

The FLSA exempts certain classes of employees from its overtime protections. *See* 29 U.S.C. § 213. One such exemption is the Motor Carrier Act ("MCA") exemption, 29 U.S.C. § 213(b)(1). The MCA exempts from the FLSA's overtime pay requirement "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). Section 31502, in turn, delineates "motor carrier[s]" and "motor private carrier[s]" as two types of employers entitled to the MCA exemption. 49 U.S.C. § 31502(b)(1), (b)(2); *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 307 (5th Cir. 2021). Congress created the MCA exemption to eliminate any conflict between the jurisdiction exercised by the Department of Labor over the FLSA and the mutually exclusive jurisdiction exercised by the Department of Transportation over the Motor Carrier Act. *Spires v. Ben Hill Cty.*, 980 F.2d 683, 686 (11th Cir. 1993). "The Secretary of Transportation 'need only possess the power to regulate the employees at issue; it need not actually exercise that power for the [MCA] exemption to apply'." *White*, 996 F.3d at 307-08 (internal citations omitted).

The DOT has promulgated regulations that interpret the statutory requirements of the MCA exemption. *See* 29 C.F.R. §§ 782.0–782.8. The pertinent regulation in this lawsuit is 29 C.F.R. § 782.2(a), which states that the applicability of the MCA exemption to a particular employee "depends both on the class to which his employer belongs and on the class of work involved in the

employee's job." The rule further explains that the Secretary of Transportation may establish the qualifications and maximum hours or service for employees of "motor carrier[s]" and "motor private carrier[s]" who:

> (1) [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act, [and]
>
> (2) engage in activities of a character directly affecting the safety and operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a). For the MCA exemption to apply, an employee must "meet both of these requirements." *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014).

Plaintiff is not a covered employee, as the MCA exemption is applicable during her entire period of employment, as SPLI will demonstrate below.

**A.    The Court should grant summary judgment as to Plaintiff's overtime claim because USC, as a DOT-Regulated Entity, did not have any legal obligation to pay overtime to Plaintiff or MCA-Exempt drivers.**

The Court should grant summary judgment as to Plaintiff's overtime claim because, under the MCA Exemption, Plaintiff is not entitled to overtime compensation. The Fifth Circuit has already held that the MCA exemption governs the relationship between Dana White, another extradition officer employed by USC, and USC in a related lawsuit filed in the Western District of Texas, Austin Division, in *White v. U.S. Corrections, LLC*, 996 F.3d 302, 307 (5th Cir. 2021) ("The district court correctly construed the law to determine that the MCA exemption governs the relationship between White and USC . . . ."). This Court should make the same finding as to Plaintiff and similarly situated extradition officers in this lawsuit.

**1.    USC's Prison Transport Operations are Regulated by the Department of Transportation.**

The first factor the Court must consider in applying the MCA Exemption is whether USC

243037                                                          5

is subject to DOT's regulatory control under § 204 of the MCA.  USC is a "motor carrier"—which is simply defined as a person providing motor vehicle transportation for compensation within the ambit of DOT's regulatory control.  29 C.F.R. § 782.2(a); 49 U.S.C. §§ 13102(14), 13501, 31502.  A "commercial motor vehicle" is defined as a self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle:

> (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,0001 pounds, whichever is greater;
>
> **(B) is designed or used to transport more than 8 passengers (including the driver) for compensation;**
>
> (C) is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; **or**
>
> (D) is used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of this title and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103.

49 U.S.C. § 31132 (emphasis added).  The word "or" in the foregoing definition indicates a disjunctive standard, and thus, any one category of "commercial motor vehicle" may satisfy the MCA Exemption.  Thus, the MCA Exemption applies to employees who operate vehicles weighing 10,001 pounds or more, **as well as vehicles used or designated to transport more than eight passengers for compensation that do not weigh 10,001 pounds.**  *See Avery v. Chariots For Hire*, 748 F. Supp. 2d 492 (D. Md. 2010).

USC's fleet of prison transport vehicles meets the disjunctive requirements for the overtime exemption set forth above.  **Ex. 1**.  Plaintiff alleges in her Original Complaint that she was responsible for transporting inmates between prisons and other facilities in passenger vans weighing less than 10,000 pounds, ECF No. 1, ¶ 20.  Further, the passenger vans she drove were "commercial motor vehicles."  **Ex. 6**, USC's Response to Interrogatory No. 3 ("Extradition Agents operate commercial motor vehicles (passenger vans designed to transport 8 or more passengers) .

. . ."); *see also* **Ex. 7**, Fiveash Driver Logs (showing 8 or more occupants of vehicles driven by Fiveash).

As discussed above, the MCA exemption applies for drivers operating vehicles used or designated to transport 8 or more passengers, including the driver, for compensation. 29 U.S.C. § 31132; *see also Avery*, 748 F. Supp.2d at 492. Plaintiff's driver logs show she used a passenger van to transport 8 or more passengers, including herself. *Id.* There was no workweek in which Plaintiff transported prisoners in vehicles capable of transporting less than 8 passengers, including the driver. *Id.*

During Plaintiff's employment, driver logs were kept with respect to Plaintiff's prisoner transportation trips for each workweek. See **Ex. 7**. These driver logs show the number of prisoners on board being transported, listed as "POB." *Id.* In the top left, the driver logs also note the vehicle number for the vehicle operated for the trip in question, as well as the trip number. *Id.* Additionally, on the top right page of the driver logs, it lists the two Extradition Officers transporting the prisoners. *Id.*

Plaintiff's driver logs clearly show Plaintiff operated a vehicle capable of transporting at least 8 or more passengers each workweek. **Ex. 7**; **Ex. 8** (Summary of Driver Logs). Plaintiff had only one trip, Trip 2629, in which she operated a vehicle with fewer than 8 passengers, including the driver. **Ex. 8**. However, the vehicle, vehicle No. 172, had been previously used on Trip 1307 to transport as many as 9 prisoners, for a maximum of 11 occupants. *Id.* Thus, the vehicle used for Trip 2629 was capable of transporting more than 8 passengers.

It is overwhelmingly clear that Plaintiff did not have a single workweek in which she operated a vehicle with a passenger capacity of fewer than 8 people. Despite some vehicles not being used to transport more than 8 passengers at any time per the driver logs, all the vehicles

operated by Plaintiff could transport at least 14 passengers, including the driver. *See* **Exs. 7, 8.**

As the Fifth Circuit made abundantly clear, the MCA Exemption conclusively applies where the Secretary of Transportation possesses the power to regulate a class of employees (like Plaintiff) at issue. *White*, 996 F.3d at 307-08; *Vanzzini v. Action Meat Distributors, Inc.*, 995 F. Supp. 2d 703, 714–15 (S.D. Tex. 2014) (the Secretary "need only possess the power to regulate the employees at issue; it need not actually exercise that power"). In fact, under the Secretary of Transportation's authority, the DOT issued a permit under which USC operates its business. **Ex. 9**. Thus, SPLI has indisputably shown that SPLI is a commercial motor carrier and under the purview of the DOT.

USC's status as a motor carrier combined with its use of "commercial motor vehicles" to transport prisoners in interstate commerce, fully vests the power to set the requirements under 49 U.S.C. § 31502 for Plaintiff to the Secretary. Thus, there is no dispute that USC is regulated by the DOT as required for the MCA exemption.

### 2. Plaintiff's position as an Extradition Officer is a Safety-Affecting Position within the MCA Exemption.

The second factor the Court must consider is whether Plaintiff—a self-admitted prison transportation driver who operated through the channels and instruments of interstate commerce—was in safety-affecting position.

Individuals who are employed by covered motor carriers like USC in safety-affecting positions—*e.g.,* drivers, driver's helpers, loaders, and mechanics—all fall into the class of employees performing duties "directly affecting safety" operations sufficient to satisfy the requirements for exemption from the FLSA's overtime requirements. 29 C.F.R. § 782.2 ("safety of operation" as used in section 204 of the MCA means "the safety of operation of motor vehicles in the transportation of passengers or property in interstate or foreign commerce, and that alone.").

The legislative findings of Jeanna's Act further sharpen the safety-sensitive nature of prison transportation driving positions:

> Congress finds the following:
>
> **(1)** Increasingly, States are turning to private prisoner transport companies as an alternative to their own personnel or the United States Marshals Service when **transporting violent prisoners**.
>
> **(2)** The **transport process can last for days if not weeks, as violent prisoners are dropped off and picked up at a network of hubs across the country**.
>
> **(3)** Escapes by violent prisoners during transport by private prisoner transport companies have occurred.
>
> \* \* \*
>
> **(5)** While most governmental entities may prefer to use, and will continue to use, fully trained and sworn law enforcement officers when transporting violent prisoners, fiscal or logistical concerns may make the use of highly specialized private prisoner transport companies an option. Nothing in sections 60101 to 60104 of this title should be construed to mean that governmental entities should contract with private prisoner transport companies to move violent prisoners; however **when a government entity opts to use a private prisoner transport company to move violent prisoners, then the company should be subject to regulation in order to enhance public safety.**

34 U.S.C. § 60101 (emphasis added). Jeanna's Act was meant to enhance public safety through regulation, in part, of driver qualifications and of the maximum hours during which a driver may be on duty. These are among the most important factors relating to safety of operations.

Plaintiff's duties as an Extradition Officer clearly and directly affected the safety of operation of motor vehicles in the transportation of passengers through the channels of interstate commerce. "Extradition Agents operate commercial motor vehicles (passenger vans designed to transport 8 or more passengers) to securely transport prisoners and inmates to and from prisons and jails across the country via public highways and interstates (interstate travel)." **Ex. 6**, USC's Response to Interrogatory No. 3. Extradition Officers like Plaintiff—entrusted with both the awesome power and solemn responsibility to transport violent inmates across the country—

directly affect the safety of operations under the MCA Exemption.  Because Plaintiff was exempt from the FLSA's overtime requirements, her overtime claim fails as a matter of law.

Further, because Plaintiff's overtime pay claim fails, her collective action claims also fails.

**B.    The MCA exemption applies to SPLI pursuant to the Fifth Circuit's holding in *Songer v. Dillon Resources, Inc*., 618 F.3d 467 (5th Cir. 2010).**

Even though SPLI is not a motor carrier or private motor carrier, the MCA exemption extends and applies to SPLI pursuant to the Fifth Circuit's holding in *Songer v. Dillon Resources, Inc.*, 618 F.3d 467 (5th Cir. 2010), *abrogated on other grounds by Amaya v. Noypi Movers, L.L.C.*, 741 Fed. Appx. 203 (5th Cir. 2018).

In *Songer*, the Fifth Circuit determined whether the MCA exemption applied to Dillon Resources, Inc. ("Dillon"), a staff leasing company that staffed truck drivers for its client trucking companies for compensation.  The plaintiffs, who were truck drivers, sued Dillon and its client trucking companies alleging that the defendants failed to pay the plaintiffs overtime compensation under the FLSA.  *Id.* at 471.  Dillon moved for summary judgment on the MCA exemption, and the plaintiffs responded that Dillon was not a motor carrier and, therefore, the MCA exemption was not applicable.  The Texas district court, after reviewing supplemental briefing by Dillon, granted its motion for summary judgment, finding the MCA exemption barred a finding of liability against Dillon for unpaid overtime compensation.  *Id.* at 471.  First, the Fifth Circuit determined that the plaintiffs were employed by carriers subject to the Secretary of Transportation's power pursuant to the Motor Carrier Act because Dillon, as joint employer with the trucking companies, was a carrier subject to the Secretary's jurisdiction.  *Id.* at 473.  The Court based its finding on the following facts:  (a) Dillon was a staff leasing company that provided drivers to the trucking companies to fulfill interstate work orders from clients for compensation, (b) Dillon was responsible for payroll, while the trucking companies were responsible for control of the drivers'

day-to-day operations, and (c) Dillon was reimbursed for wages and benefits paid to the drivers, and receives a fee when the drivers are assigned. *Id*. Thus, Dillon and the trucking companies were considered to be joint employers for purposes of application of the MCA exemption. Second, the Court determined that the drivers were engaged in activities that directly affected operational safety of motor vehicles in the transport of property in interstate commerce. *Id*. The Court found that the drivers were reasonably expected to perform interstate transport because they were called upon to drive in instate commerce during their employment. *Id.* at 475. Thus, the MCA exemption barred the plaintiff's overtime pay claims as to Dillon. *Id*. at 476.

Similar to the staff leasing company in *Songer*, SPLI is a licensed professional employer organization that provides staff leasing services to its clients. Under the terms of the Client Leasing Agreement ("CLA") and State Texas Addendum ("Addendum") between SPLI and USC, SPLI was contracted to provide "employee leasing services" to USC on behalf of "Leased Employees" in accordance with the terms of these agreements. **Ex. 3**, Decl. of Heather Clark, para. 4; **Ex. 4**; **Ex. 5**. "Leased Employees" are defined in the CLA as "those employees who have completed SPLI's employment process and have been accepted, approved, and paid by SPLI," and include Plaintiff. **Ex. 4**, para. II.

Like Dillon, SPLI provides all of the same services to USC, except that SPLI does not hire and train employees. SPLI "retain[s] sufficient direction and control over the workplace and over Leased Employees as is necessary to supervise all day-to-day work activities of Leased Employees." **Ex. 4**, para. V(A). According to the terms of the Addendum, USC "retains sole responsibility for: A The direction and control over covered Leased Employees as is necessary to conduct [its] business, discharge any applicable fiduciary responsibilities, and comply with any applicable licensure, regulatory, or statutory requirements . . . ." **Ex. 5**, para. III(A).

However, SPLI "[s]hares with [USC] a right of direction and control over covered Leased Employees." **Ex. 5**, para. II; *see also* **Ex. 4**, para. III(C). Specifically, SPLI "[s]hares with [USC] the right to hire, fire, discipline and reassign covered Leased Employees." **Ex. 5**, para. II(D); *see also* **Ex. 4**, para. III(C).

Further, pursuant to the terms of the agreements between SPLI and USC, SPLI is responsible primarily for the payment of wages and federal and state taxes, administration of any applicable benefit plans, administration of worker's compensation insurance coverage, and provision of unemployment compensation insurance, for Leased Employees. **Ex. 5**, para. II(B) and II(C); **Ex. 4**, para. III(A)(1)-(A)(5). In exchange for the services provided by SPLI, USC pays SPLI service fees in an amount agreed between the parties, which fees include but are not limited to funds sufficient to pay and administer all wages, payroll taxes, workers' compensation expenses and benefits costs incurred by or payable to all Leased Employees." **Ex. 4**, para. IV(A).

Moreover, Plaintiff has alleged in her Original Complaint that both SPLI and USC jointly employer her. ECF No. 1, ¶ 4, 19. Thus, the Court should find that SPLI and USC are joint employers for purposes of application of the MCA exemption.

Further, as established in **Section A** above, SPLI has demonstrated that Plaintiff and other drivers were engaged in activities that directly affected operational safety of motor vehicles in the transport of property in interstate commerce.

**C.  Plaintiff's sole relief for her claim for failure to post notices required by 29 CF.R. § 516.4 is equitable tolling.**

Plaintiff's relief for her claim for failure to post the notices required by 29 C.F.R. § 516.4 is limited to equitable tolling of her statute of limitations deadline. *Rosales v. HEB Grocery Co.*, 2016 WL 3458214, at *2-3 (S.D. Tex. Jun. 24, 2016) (finding that equitable tolling for an employer's failure to post signs notifying employees of their legal rights extends to FLSA claims).

The *Rosales* court recognized that "[n]either the ADEA nor the FLSA provided for penalties against an employer failing to post required notices." *Id.* at *3. The failure to post these notices simply extends an employee's statute of limitations deadline. *Id.*

Here, even if Plaintiff could present evidence that SPLI failed to post notices required under 29 C.F.R. § 516.4, such action only operates to toll her statute of limitations deadline to file her FLSA overtime pay claim. Because SPLI has shown that Plaintiff is not entitled to overtime pay due to the application of the MCA exemption, her claim under 29 C.F.R. § 516.4 is moot and also fails as a matter of law.

### D.   There is no private right of action for alleged violations of the FLSA's recordkeeping requirements under 29 U.S.C. § 211 (c).

Plaintiff's recordkeeping claim fails because there is no private right of action for an employer's failure to maintain accurate time and pay records under 29 U.S.C. § 211(c). While the FLSA does require employers to maintain accurate and adequate records pursuant to 29 U.S.C. § 211(c), "there is no private right of action" to enforce this provision. *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 843 (6th Cir. 2002); *White v. U.S. Corrections, LLC*, 2019 WL 5106019, at *6 (Oct. 11, 2019), *rev'd on other grounds*, 996 F.3d 302, 307 (5th Cir. 2021); *Cunningham v. Elec. Data Sys. Corp.*, 579 F. Supp. 2d 538, 543 (S.D.N.Y. 2008); *Rossi v. Associated Limousine Servs., Inc.*, 438 F. Supp. 2d 1354, 1366 (S.D. Fla. 2006); *O'Quinn v. Chambers Cty., Tex.*, (S.D. Tex. 1986), *amended on other ground*s, 650 F. Supp. 25 (S.D. Tex. 1986). Accordingly, Plaintiff's claim under 29 U.S.C. § 211(c) fails as a matter of law.

### V.   CONCLUSION

Plaintiff was an Extradition Officer who operated USC's DOT-covered passenger vans on USC's behalf. Plaintiff is not entitled to overtime compensation as a matter of law under the MCA Exemption. Thus, Plaintiff is not a "covered employee" for FLSA overtime purposes, and the

Court should grant summary judgment against her (and individuals similarly situated) on her overtime pay claim as a matter of law.

WHEREFORE, Defendant South East Personnel Leasing, Inc. respectfully requests that this Court grant summary judgment against Plaintiff and dismiss Plaintiff's overtime claim with prejudice pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant respectfully requests and other and further relief to which it is entitled.

Respectfully submitted,

By: */s/ Heidi J. Gumienny*
HEIDI J. GUMIENNY
Texas Bar No. 24036696
hgumienny@grsm.com
GORDON REES SCULLY MANSUKHANI LLP
3D/International Tower
1900 West Loop South, Suite 1000
Houston, TX 77027
Phone: (713) 961-3366
Fax: (713) 961-3938

**ATTORNEYS FOR DEFENDANT
SOUTH EAST PERSONNEL LEASING, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 21st day of January, 2022, with a copy of this document via the Court's CM/ECF system per United States District Court, Western District of Texas, Local Rule CV-5. Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

*/s/ Heidi J. Gumienny*
Heidi J. Gumienny